UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

BRANDI L. CROMEANS,

                Plaintiff,

v.                                                              CASE # 19-cv-00446

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | JEANNE ELIZABETH<br> MURRAY, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ANDREEA LAURA<br> LECHLEITNER, ESQ.<br>HEETANO<br> SHAMSOONDAR, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on November 14, 1984 and has a high school education. (Tr. 216, 221). Generally, plaintiff's alleged disability consists of bipolar disorder, generalized anxiety disorder and posttraumatic stress disorder (PTSD). (Tr. 220). Her alleged onset date of disability is April 30, 2015. (Tr. 216). Her date last insured is December 31, 2020. (Tr. 15).

### B.     Procedural History

On February 9, 2016, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (Tr. 164, 166). Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On February 6, 2018, plaintiff appeared before the ALJ, Brian Curley. (Tr. 32-61). On March 7, 2018, ALJ Curley issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-27). On February 8, 2019, the Appeals Council ("AC") denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant engaged in disqualifying substantial gainful activity from April 30, 2015 through September 16, 2015(20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. As of September 16, 2015, the claimant has the following severe impairments: affective disorder, anxiety related disorder, and posttraumatic stress disorder (PTSD)(20 CFR 44.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) but with the following limitations: she can occasionally balance, stoop, kneel, and crouch; she cannot climb ladders, ropes, or scaffolds; she cannot crawl; she is able to understand, remember, apply information, focus on and complete simple work-related tasks; she is able to maintain concentration, persistence, or pace for simple work activities; she can interact as needed with supervisors and peers sufficiency for tasks completion; she can occasionally interact with the public, but should avoid crowds of more than 15 people; lastly, she is able to adapt to routine change and manage herself appropriately.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on November 14, 1984 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2015, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-27).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes the broad argument that the highly specific RFC is not supported by substantial evidence, but is rather based upon the ALJ's lay interpretation of bare medical findings, mischaracterizations of the record, and silence in the record. (Dkt. No. 13 at 12 [Plaintiff's Mem. Of Law]). More specifically, the plaintiff argues the ALJ did not properly consider the opinion of Dr. Luna, failed to develop the record, incorrectly considered plaintiff's mental health records of improvement and lack of treating source opinion. (*Id.* at 13-19).

### B. Defendant's Arguments

In response, defendant generally argues the ALJ's RFC finding is supported by substantial evidence. (Dkt. No. 15 at 7 [Defendant's Mem. of Law]). Defendant argues the ALJ properly weighed the medical opinion evidence and the record was adequate for the ALJ to make a determination. (*Id*. at 7-12).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.** **Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

5

>(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

Plaintiff only challenges the ALJ's mental RFC finding. Specifically, plaintiff asserts the ALJ relied on his own lay interpretation of bare medical findings to reach a highly specific RFC finding in absence of a supporting medical opinion. (Dkt. No. 13 at 12). Plaintiff asserts the ALJ gave great weight to the only mental impairment opinion by Dr. Luna but that the ALJ erred by including limitations in the RFC finding that Dr. Luna never assessed. (Dkt. No 13 at 15-16). Plaintiff also asserts that the ALJ relied on the absence of findings and opinions in the record but should have developed the record further by obtaining another opinion regarding plaintiff's mental functioning, either from another consultative examiner or the plaintiff's psychiatrist. (Dkt. No. 13 at 17-18, 21-22).

### A. Substantial Evidence

Plaintiff initially argues the ALJ relied on his lay interpretation of the evidence because he had greater limitations in the RFC than were contained in the only medical opinions in the file. This argument is a veiled substantial evidence argument. Consultative examiner, Dr. Luna, opined the plaintiff had no limitation in her abilities to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate

6

decisions, and relate adequately with others; and only a mild limitation in her ability to deal with stress. (Tr. 24; *see* Tr. 302). ALJ Curley accorded the greatest weight to Dr. Luna's opinion, stating it was based on exam findings and consistent with cumulative psychiatric treatment records. (Tr. 24).

Notably, plaintiff's treatment notes not only support Dr. Luna's opinion, but provide independent support for the ALJ's RFC finding. *See Monroe v. Comm'r of Soc. Sec*, 676 F. App'x. 5, 9 (2d Cir. 2017) (finding that the ALJ could rely on treatment notes to formulate the RFC assessment and that he was not required to obtain a medical opinion regarding the RFC). Previously in his decision, the ALJ discussed the psychiatric records and noted mental status findings were largely unremarkable, except for occasionally depressed and labile mood. (Tr. 22). Findings of treating psychiatrist, Dr. Meer, and other practitioners demonstrated plaintiff had linear thinking, unremarkable thought content, full orientation, intact memory, intact judgment, intact attention and concentration, and average intelligence (Tr. 22; *see* Tr. 312, 386, 392, 401, 405, 409. 413, 417, 421, 425, 435, 442, 448, 481-82, 495, 506, 514, 579).

Contrary to plaintiff's argument that the ALJ misstated and improperly considered periods of improvement, the ALJ was very detailed in noting that an increase in her symptoms correlated with periods of non-compliance with her medications. (Tr. 22; *see* Tr. 408, 414, 428). While mental status examination findings did not vary much when she was on and off her medications (Tr. 429, 435), when plaintiff resumed her medication, her subjective symptoms subsided and she was more active. (Tr. 22). For example, during a January 2016 session, plaintiff reported that she made an appointment to take her cat to the veterinarian, she had gotten her car repaired, and she had arranged for some medical visits. (Tr. 363). During a February 2016 counseling session, plaintiff complained of being nonfunctional, but her therapist pointed out that a non-functional person

would not be doing the things that plaintiff described doing. (Tr. 366; *see* Tr. 363). In March 2016, plaintiff stated that she was exercising by lifting weights. (Tr. 377). During an April 2016 session, she reported "doing more and getting out," including going to the gym and visiting her friends from a roller derby. (Tr. 380). In June 2016, plaintiff reported that she was more active and was even volunteering at roller derby events, doing scorekeeping. (Tr. 22; *see* Tr. 547-48). Over time, plaintiff continued to be active, going out with her boyfriend, exercising, skating, and doing scorekeeping at roller derby events. (Tr. 22; *see* Tr. 486, 502, 508, 516-17, 519, 535-36, 541, 547). In June 2017, plaintiff told Dr. Meer While she still felt anxious at times, it was "not severe enough to affect her everyday functioning" (Tr. 505).

In addition to the daily activities listed in treatment notes, when formulating the RFC, the ALJ also properly considered those activities reported in the course of her application for benefits and at the hearing. *See Monroe*, 676 F. App'x. at 9 (finding that the ALJ could rely on plaintiff's activities of daily living to formulate the RFC assessment). The ALJ noted that plaintiff cooked (Tr. 19, 24; *see* Tr. 228, 302), cleaned (Tr. 19, 24; *see* Tr. 302), did laundry (Tr. 19, 24; *see* Tr. 302), shopped (Tr. 19, 24; *see* Tr. 229), drove (Tr. 19, 24; *see* Tr. 40, 393), managed her finances (Tr. 19, 24; *see* Tr. 303), took care of her personal grooming needs (Tr. 19, 24; *see* Tr. 302), and participated in leisure activities. (Tr. 19, 24; *see* Tr. 303). In terms of leisure activities, plaintiff reported that she biked, did yoga, baked, read, and crocheted. (Tr. 52, 230, 303). She attended roller derby events and acted as a score keeper. (Tr. 53, 55). She used Facebook to stay in touch with a friend. (Tr. 54). She went out to dinner with her boyfriend several times per month. (Tr. 56).

In sum, the opinion of a consultative examiner like Dr. Luna, may serve as substantial evidence in support of an ALJ's decision. *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013);

*Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). Further, the plaintiff's ability to perform a wide variety of routine activities also provides support for the ALJ's mental RFC finding that was not straight from the consultative report. *See Cheatham v. Comm'r of Soc. Sec,* 2018 WL 5809937, at *10 (W.D.N.Y. Nov. 6, 2018) (finding that the ALJ's determination that plaintiff could maintain attention and concentration for simple, routine, repetitive tasks and interact to some degree with others is supported by plaintiff's activities, which included using public transportation, preparing meals, cleaning, shopping and playing basketball).

Plaintiff's assertion that the ALJ relied on lay judgment for the highly specific RFC because there are greater limits than found by the consultative examiner is unavailing. *McLeod v. Berryhill,* Case No. 1:17-CV-00262, 2018 WL 4327814, at *3 (W.D.N.Y. Sept. 11, 2018) (consultative examiner's opinion supported RFC finding, noting that "'the fact that the ALJ's RFC assessment did not perfectly match [an examining medical source]'s opinion, and was in fact more restrictive than that opinion, is not grounds for remand.'") (quoting *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)). Plaintiff testified that she had difficulty being in crowds, and that even being among 10 to 15 people was too much for her. (Tr. 49). Despite normal memory and concentration on examination, the ALJ restricted her to performing only simple, routine work because she reported difficulty with memory and concentration. (Tr. 22, 49, 231-232). The ALJ was properly assessing claimant's subjective allegations and factored them into the RFC finding. Plaintiff is merely trying to argue that the ALJ should have weighed the evidence differently.

The only other opinion evidence in the record was Dr. O'Austin-Small, a State agency psychologist. (Tr. 25; *see* 92). Dr. O'Austin-Small assessed that plaintiff had a mild limitation in

her activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in concentration, persistence, or pace; and experienced no episodes of decompensation (Tr. 92). Dr. O'Austin-Small concluded that plaintiff did not have a severe mental impairment (Tr. 92). The ALJ gave the opinion little weight and found the impairments severe but the opinion does not support greater limitations than those found in the RFC. (Tr. 25). In fact, the opinion undermines plaintiff's allegation of disability.

ALJ Curley thoroughly discussed how the evidence regarding the mental impairments would limit plaintiff, but that the same evidence did not support the severity alleged. (Tr. 21). *See* 20 C.F.R. § 416.929(c)(3)(iv)-(vi) (in "[e]valuating the intensity and persistence of [a claimant's] symptoms…and determining the extent to which [those] symptoms limit [the claimant's] capacity for work," ALJs are to consider, among other things, medication, medical treatment other than medication, and other measures taken to relieve the claimant's symptoms); see also, e.g., *Gray v. Berryhill*, No. 1:16CV00718 (HBF), 2018 WL 5792314, at *7 (W.D.N.Y. Nov. 5, 2018) ("After summarizing plaintiff's testimony, the ALJ reviewed the objective evidence of record, finding that the record did not support the plaintiff's claims that his chronic pain and other medical impairments produced the functional limitations he claimed.").

### B. Duty to Develop

It is well settled "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508509 (2d Cir. 2009) (citations and alterations omitted). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or by a paralegal." *Rosa v. Callahan,* 168 F.3d 72, 79 (2d Cir.1999)

(internal alterations and quotation marks omitted); *see Eusepi v. Colvin*, 595 F. App'x 7, 9 (2d Cir. 2014) ("The ALJ's general duty to develop the administrative record applies even where the plaintiff is represented by counsel, but the agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record."). However, "[t]he ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)) (internal citations omitted); *see Abbott v. Colvin*, 596 F. App'x 21 (2d Cir. 2015) (ALJ did not err in failing to seek additional information from a treating source because there were no obvious gaps in the record).

Plaintiff argues the ALJ should have developed the record further by obtaining another opinion regarding plaintiff's mental functioning, possibly from treating psychiatrist Dr. Meer. (Dkt. No. 13 at 17-18, 21-22). The Regulations only require an ALJ to develop the record further when there is an inconsistency in the evidence and the evidence he has is insufficient. *See* 20 C.F.R. § § 404.1520 b(b)(1), 416.920b(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have").

In this case, ALJ Curley had sufficient evidence upon which to base his decision, including psychiatric treatment notes, a consultative examination, review by a State agency psychologist, and plaintiff's statements at the hearing and in questionnaires about her functioning. Contrary to plaintiff's argument, an ALJ's RFC determination does not need to mirror a medical opinion in the record. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his

decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

In his decision, the ALJ specifically highlighted that the record did not contain any medical source statement from plaintiff's treating sources. (Tr. 25). Plaintiff argues that this was an error by the ALJ and that an ALJ may not rely upon the absence of evidence when determining disability. Case law however does not support plaintiff's argument. The ALJ clearly and properly explained that the lack of a medical source statement was not dispositive of the case but that there was no opinion contradicting the findings of Dr. Luna or the opinion of Dr. O'Austin-Small. (Tr. 25). The Commissioner may rely not only on what the record says, but also on what it does not say. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *see Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (ALJ properly relied on the absence of findings in the record regarding the plaintiff's alleged inability to sit).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is

**GRANTED.**

Dated: June 5, 2020   *J. Gregory Wehrman*
Rochester, New York   HON. J. Gregory Wehrman
United States Magistrate Judge